O’Neall, J.
By the Act of 1821, (Acts, p. 12,) it is provided “ that if any person, from and after the passing of this Act, shall, wilfully, maliciously, and deliberately murder any slave within this. State, such person, on conviction, shall suffer death without the benefit of clergy.” This made the murder of a slave felony. Ilawkins, speaking of an offence made felony by statute, says, “ It seems clear that not only those crimes which -are made felonies by express words, but also all those wjiich are decreed to have or undergo judgement of life and member by any statute, become felonies thereby, whether the word felony were omitted or mentioned.” Hawk. P. C. bk. 1, ph. 7, §5..
Is an attempt to murder a slave an indictable offence ? is the question now to be considered.
The criminal offence of assault and battery cannot at common law be committed on the person of a slave. For notwithstanding for some purposes a slave is regarded in law as a. person, yet generally he is a mere chattel personal, and his right of personal protection belongs to his master, who can maintain an action of trespass for the battery of his slave. Hilton v. Caston, 2 Bail. 98. There can be therefore no offence against the State for a mere beating of a slave, unaccompanied by any circumstances of cruelty or an attempt to kill and murder. The peace of the State is not thereby broken; for a slave is not generally regarded as legally capable of being within the peace of the State. lie is not a citizen, and is not in that character entitled to her protection.
But notwithstanding these may be regarded as common law principles in this State in relation to slaves, yet our statute law has made some important provisions for the punishment of the more aggravated offences against their persons. The Act of 1740, 2 Brev. Dig. tit. 156, sec. 45, p. 241, makes any unusual and cruel treatment of a slave an indictable offence. It provides that “in case any persons shall wilfully cut out the tongue, put out the eye, castrate or cruelly scald, burn, or deprive any slave of any limb or member, or shall inflict any other cruel punishment, other than by whipping or beating with a horsewhip, cowskin, switch, or small stick, or by putting-irons on, or confining or imprisoning such skve, every person shall, for every such offence, forfeit the sum of one hundred1 pounds current money.” 1 think, under this act, the shooting-a slave might be indicted as a cruel punishment. Be this as it may, (for it is wholly unimportant on this occasion,) this act shows, that for injuries done to the person of a slave short of the *455 destruction of life, a white man might he charged criminally and punished.
The act of 1821 changed the murder of a slave from a mere misdemeanor, which it was under the act of 1740, to a felony. This change, I think, made a most important alteration in the law of his personal protection. It, in a criminal point of view, elevated slaves from chattels personal to human beings in the peace of the State ; for they must be regarded as human beings in the peace of the State, or murder could not be committed by slaying them. The attempt to commit murder was always an indictable offence ; it was once indeed capital, but subsequently it came to be more appropriately regarded as a misdemeanor merely. Serjeant Hawkins, in his 1st book, ch. -1-5, p. Ill of the 1st vol. of the Pleas of the Crown, says, “The ancient common law of England provided with such anxiety for the personal safety of the subject, that every act done against another which might in its consequences prove fatal to his existence, was construed to be felonious. Of this there are several instances in the year books of Edward the second and Edward the third. In the reign of Edward the fourth, the maxim that voluntas repvtabihtr pro facto, began to grow obsolete, and this offence was considered as a high misdemeanor only, punishable at discretion.” This would not, it is true, justify us in concluding that the attempt to murder a slave would be placed on the same footing at common law as the attempt to murder a white man. It shows, however, than an attempt to commit murder was always an offence at common law, only varying in the degree of the punishment. If this portion of the common law stood alone and unaided by other parts to which I shall now advert, I should think that it could not of itself sustain the indictment under consideration. But at ,page 113, Hawkins, speaking of the ancient common law against the intention to commit a crime, and of its change in the time of Edward the fourth, says, “ and since that time the bare intention to commit a felony has been considered as a misdemeanor only, and punishable by fine, imprisonment, &c.” At page 73, it is said, “ But it seems agreed at this day, that felony shall not be imputed to a bare intention to commit it; yet it is certain that the parly may be severely fined for such an intention.” Mr. Christian, in a note to his edition of Blackstone’s Commentaries, 4th vol. p. 5, says, “In the English law, misdemeanor is generally used in contra-distinction to felony, and misdemeanors comprehend all indictable offences which do not amount to felony, as perjury, battery, libels, conspiracies, attempts and solicitations to commit felonies, &c.”
From these authorities it is clear that an attempt to commit a felony is an indictable offence. Does it make any difference *456 whether it is a felony created by statute or at common law 1 I think there is none. The authorities cited speak of felony generally, without a distinction. Indeed it seems to me there .g jug(; ag Ieas0n to punish in the one case as in the other. Both are alike violations of the law in intention, to the preju. dice of one or more of the citizens of the State. It is this which is criminal, and which is made the subject of punish, ment. But Hawkins, upon whom I have already so much relied, settles this question. He is speaking of what is implied in every statute making an offence felony, and says, “ It seems clear that every such statute does, by necessary consequence, subject the offender to the like attainder and forfeiture, &c. and also does require the like construction as to those who shall be accounted accessaries before or after, and to all other intents and purposes as incidental to a felony at common law.” Hawk. P. C. bk. 1, ch. 7, sec. 10, vol. 1st, p. 73. Again in the 12th sec. he says, “ it is said that misprision of felony is as well incidental to a felony created by statute as to one at common law.” It would hence seem that there was no difference in their incidents between a felony at common law, or by statute. It is as much incidental to a felony that the attempt to commit it should be indicted and punished as a misdemeanor, as that its accessaries before or after the fact should be liable to be indicted and punished, or that he who knows of and conceals a felony is guilty of misprision of felony. All of these are common law offences, springing from a felony, no matter how created.
In the outset of this opinion 1 took occasion to shew that the murder of a slave is a felony, by the act of 1821, and I have since shewn conclusively that the attempt to commit a felony, whether by statute or common law, is a misdemeanor, punish, able by fine and imprisonment, at the discretion of the Court. The decision of the judge below that the indictment will lie for an assault with an intent to murder a-slave, is therefore correct, and the motion to reverse his decision is dismissed.
Johnson and Harper, Js. concurred.